**VOGTLANDISCHE MASCHINEN–FABRIK v. PARADIS et al.**

**ZAHN v. SAME.**

District Court, D. New Jersey.

June 26, 1935.

Max D. Ordmann, of New York City, for plaintiffs.

Meyer D. Siegel, of New York City, for defendants.

CLARK, District Judge.

This litigation involves four patents in the art of embroidery machinery. Three of the patents had expired at the time of the suit, and the fourth seemed to the court rather limited in scope. The plaintiff is a German company and manufactures, as we understand it, a substantial portion of the world's lace-making and embroidery machinery. The record disclosed what seemed a deliberate attempt at patent evasion. Its character undoubtedly aroused the indignation of plaintiff's counsel. That indignation made the trial difficult.

The defendants are an importer and two gentlemen who manufacture embroidery on a small scale (six machines). The importer, Paradis, had purchased some rather ancient embroidery machines of the plaintiff's manufacture in Poland. Upon their arrival in this country, he sold them to Kominsky and Beiser. They operated them and are now being sued for that operation. They concede validity of three of the patents (which is rather more than this court could conscientiously do) and admit their infringement. No. 1,191,131 to Sieber; No. 1,158,096 to Zahn; and No. 1,160,338 to Stellmacher. As to them they justify by an appeal to the rule that sale by the patentee frees the ultimate purchaser from the restriction of the monopoly. Curtiss Aeroplane & Motor Corporation v. United Aircraft Engineering Corporation (C. C. A.) 266 F. 71. The only trouble with such an appeal lies in those obstinate things—facts. To mention only two, the record shows

that the patents were either never transferred to the plaintiff or were transferred subsequent to the sale. Further there was no affirmative proof that the purchase in Poland by Paradis was from an agent of the plaintiff.

■ The situation with respect to the fourth patent (No. 1,266,747 to Zahn) is more complicated. That patent had not quite expired and its infringement was denied. The sense of outrage of plaintiff's counsel and the somewhat casual attitude of his opponent left the court without much assistance in resolving this issue. The court obtained some background by a perusal of what appears to be the standard textbook on the subject. Felkin's Machine Wrought Hosiery and Lace Manufacture. Any one who has visited Lyons has probably seen the statue of Joseph Marie Jacquard. He was a weaver of that city (born in 1752) whose improvements in the art of weaving are the basis of all mechanical transference of patterns to textiles.

Originally, apparently, an embroidery machine was guided in its tracing of the pattern by a manually operated apparatus. This was called a "pantograph" (well-known for the enlargement of designs). The operator followed the pattern with a stylus to which was attached levers and other mechanical means for controlling the embroidering (needles, perforators, etc.) implements.

Later this pantograph was replaced by Jacquard cards or rolls, and so automatic pattern tracing was made possible. These cards or rolls brought about the operation of the stitching and boring appropriate to a particular pattern by means of the arrangement of perforations in cardboard or paper (a la pianola). Manifestly, in the working out of a pattern only certain parts of an embroidery apparatus performed their functions at any one time. So the exigencies of the design might require first stitching and then boring and so forth. Manifestly, also, all idle machinery is made active again only by the expenditure of additional energy. Inertia and its effect is well known to physics.

It was to the solution of this problem of physics that the patentee addressed himself. Successfully, at least as far as the Patent Office was concerned. He describes his purpose in the specification in the following language:

"Yet the efficiency of the automatic embroidering machine suffers a good deal on account of the fact that each time one set of embroidery implements is changed for another particularly in passing from embroidering to boring, an interruption of the work is occasioned because the operating heavy masses of one set must be arrested and those of another set started.

"This invention has for its object to remove these drawbacks and consists in that in lieu of completely. arresting the operating implements the same are given short idle motions while the main shaft of the machine and all cams fixed thereon remain in action." Transcript. of Record, p. 205.

—and claims its accomplishment in a typical claim which we quote: "1. In an embroidering machine, embroidering implements, perforating implements, a single shaft rotating continuously in one direction whereby the said implements are operated, means including said shaft for imparting to the different parts of the embroidering implements an idle or ineffective motion without stopping the rotation of said shaft and means including said shaft for imparting an idle or ineffective motion to said perforating implements without stopping the rotation of said shaft." Transcript of Record, p. 207.

This specification and this claim indicate the entirely mechanical character of the improvement. To estimate any duplication an examination of the machine against which it was charged was necessary. The court accordingly adopted the procedure which is discretionary with it but which in its judgment should be compulsory. It appointed its own expert, a patent attorney and mechanical engineer of both integrity and distinction. This expert examined the defendants' machines with care and as we think with skill. Upon his report an unfortunate controversy developed between counsel as to this expert's impartiality. The court has its own opinion of the merits of this controversy, but the merits of the case do not call for its expression.

They do not call for such expression because the court's questioning of counsel finally established that the said expert's description and drawings of defendants' machine were accurate. These drawings and their verbal explanation showed that the defendants' automatic attachment did not include mechanical means for se-

curing this so-called idle and ineffective motion. In the plaintiff's machine implements not in use were kept continuously moving, but the movement did not go to the length of their function. In other words, while the stitching went on the borers did not perforate the cloth, but stopped short of it and vice versa. In the defendants' machine, on the other hand, the borers or the needles, as the case may be, were brought to a full stop.

As we have said, plaintiff's counsel finally conceded that this was the mechanical situation. He sought to avoid it, as we understood him, by some theory of "equivalents." How stopping is the equivalent of going we fail to perceive.

Settle order in accordance with this opinion.